OPINION OF THE COURT
Paul A. Victor, J.
Relief Sought
Defendants JRC Transportation, Inc., and J&C Transportation, Inc. (hereinafter JRC)[1] each move, pursuant to CPLR 3212, for summary judgment and dismissal of the action against them claiming that they are not vicariously liable for the negligence of the owner and operator of the vehicle, since it was used without their knowledge or permission. The motion is opposed by defendants McCallum and McLean, the owner and operator of the vehicle, as well as by the plaintiffs.
An Interesting Collateral Estoppel Issue Should a defendant (JRC Transportation) be collaterally estopped and prevented from litigating, in the present tort proceeding, an issue (vicarious responsibility), which was litigated and lost by its insurance carrier in a coverage *539 disclaimer action brought by that carrier in the United States District Court? In other words, should JRC and its insurance carrier be held to have been so united in interest in the federal action so as to satisfy the “identity of party” requirement for application of the collateral estoppel doctrine?
The Parties, the Facts and Relevant Background
This is a wrongful death action brought by plaintiff Alphonso Lewis, as administrator of the estate (and guardian for the children) of Kenneth Thomas, deceased, who was allegedly wrongfully run over by a tractor-trailer during the West Indian American Day Parade conducted in Brooklyn on September 2, 1996. A cause of action for loss of services on behalf of plaintiff Vermaneta Lewis, the alleged wife of Kenneth Thomas, deceased, was discontinued with prejudice. The complaint alleges causes of action for negligence, recklessness, assault, battery and civil rights violations allegedly committed by the defendants.
The defendant Donovan McLean was the operator of the tractor-trailer; and the defendant Glenford R. McCallum was the owner of, and passenger in, the tractor which was pulling a flatbed trailer (being used as a parade float).
The defendants City of New York and New York City Police Officer Wanamaker are named as defendants because, among other things, of the alleged negligent and/or reckless conduct of defendant Wanamaker in ordering the operator of the tractor-trailer to proceed into and through an intersection despite evident danger to the multiple pedestrian parade revelers who had surrounded the vehicle.
The third-party defendant, Transport International Pool, was allegedly the owner-lessor of the flatbed trailer; and JRC became the “lessee” thereof pursuant to an agreement signed by defendant McCallum on behalf of JRC. The defendant JRC allegedly “supplied” the trailer to defendant McCallum, pursuant to an alleged “Independent Contractor Agreement” which provided, among other things, that JRC would have exclusive use of Mc-Collum’s services and tractor from April 25, 1996 to October 31, 1996. However, McCallum acknowledged and testified that he did not have JRC’s permission to utilize the tractor-trailer in the parade; and it appears that defendant JRC only became aware of the use of the vehicle after the underlying incident took place.
The defendant Jam City Production is alleged, among other things, to have entered into a “lease agreement” with the de *540 fendant McCallum, pursuant to which the tractor-trailer (to be used as a float) and the services of defendant McCallum (as an operator thereof) were to be provided for the parade sponsored by the West Indian Carnival Associations (WICA), and the British Virgin Islands.[2]
In a related proceeding in federal court, Reliance National Insurance (JRC’s insurance carrier) sought, via a declaratory judgment action, to disclaim coverage upon an allegation that the vehicle was allegedly being used outside the scope of the agreement between JRC and defendant McCallum. The United States District Court determined (pursuant to Interstate Commerce Commission [ICC] rules) that the tractor owner (McCallum) and driver (McLean) were statutory employees of JRC because, among other things, the tractor bore JRC’s logo; that JRC was vicariously liable for the negligence, if any, of said defendants; and that Reliance (JRC’s insurer) was obligated to cover Mc-Callum and McLean as well as JRC. Specifically, the court ruled that defendant JRC was responsible for the actions of McCallum and McLean under what is commonly referred to as “logo liability.” As commonly understood, “logo liability” is a type of vicarious responsibility by which a carrier is liable as a matter of law for injuries caused by the negligence of the operator of a leased vehicle, where that vehicle bears the carrier’s ICC logo. (Reliance Natl. Ins. Co. v Royal Indem. Co., 2001 WL 984737, 2001 US Dist LEXIS 12901 [SD NY, Aug. 24, 2001]).
The Contentions of the Parties to this Motion
In its motion in the present proceedings, JRC again argues that it should have no vicarious liability because it was not the employer of either defendant McCallum or defendant McLean; and that, even if they were employees, they were acting outside the scope of their employment. JRC further argues that it owned neither the tractor nor the trailer which struck the decedent, but even if it did, JRC did not give permission for their use in the parade.
*541 In opposition, plaintiff, as well as defendants McCallum and McLean each argue that JRC should be estopped from raising these defenses in this proceeding since these identical issues were already litigated in the United States District Court, by a party (Reliance) whose “interests were in all respects aligned” with the insured JRC. Thus, they contend that, under the doctrines of “collateral estoppel” and/or “res judicata,” defendant JRC should be estopped because: Reliance had a full and fair opportunity to litigate the issues in the prior proceeding; Reliance and JRC were and are united in interest; and the issues raised in this state proceeding are identical to those raised and decided in the federal court.
In its reply, JRC now argues only that summary judgment should be granted because of the absence of any evidence of negligence on the part of defendants McCallum or McLean.
Law Relating to Res Judicata/Collateral Estoppel
“Under the doctrine of res judicata or collateral estoppel, a party is barred from relitigating in a state action a claim or issue that is identical to that litigated and resolved in a prior federal action.” (73A NY Jur 2d, Judgments § 428; Lodal, Inc. v Home Ins. Co., 309 AD2d 634, 634 [1st Dept 2003].) This rule is founded upon the belief that
“ ‘it is for the interest of the community that a limit should be prescribed to litigation, and that the same cause of action ought not to be brought twice to a final determination. Justice requires that every cause be once fairly and impartially tried; but the public tranquillity demands that, having been once so tried, all litigation of that question, and between those parties, should be closed forever.’ ” (Fish v Vanderlip, 218 NY 29, 36-37 [1916]; Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304 [1929]; Hendrick v Biggar, 209 NY 440 [1913].)
“It is a doctrine intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it.” (Kaufman v Eli Lilly & Co., 65 NY2d 449, 455 [1985].)
Res judicata, or claim preclusion, is invoked to prevent a party, or one who is in privity with the party, from relitigating a previously litigated action. In other words, res judicata will only apply if there has been a final judgment on the merits. This form *542 of claim preclusion applies to all issues and theories of recovery applicable to the cause of action, whether or not they were actually litigated.
“As a general rule, ‘once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy’ (O’Brien v City of Syracuse, 54 NY2d 353, 357 . . . ). Thus, where a plaintiff in a later action brings a claim for damages that could have been presented in a prior CPLR article 78 proceeding against the same party, based upon the same harm and arising out of the same or related facts, the claim is barred by res judicata (Pauk v Board of Trustees, 111 AD2d 17, 20-21, affd 68 NY2d 702).” (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 347-348 [1999].)
However, it must be noted that the Court of Appeals has observed that “[i]t is not always clear whether particular claims are part of the same transaction for res judicata purposes.” (Xiao Yang Chen v Fischer, 6 NY3d 94, 100 [2005].)
Collateral estoppel, or issue preclusion, is a corollary to the doctrine of res judicata. It bars the relitigation of an issue (as distinguished from the action or claim) which was actually and necessarily previously decided in a prior proceeding. (Ryan v New York Tel. Co., 62 NY2d 494 [1984].)
To invoke the “issue preclusion” doctrine of collateral estoppel the following elements must be established: (1) an identity of an issue which was necessarily decided in the prior action; and (2) a full and fair opportunity by the party against whom collateral estoppel is being invoked to have contested the said issue. {Allied Chem. v Niagara Mohawk Power Corp., 72 NY2d 271 [1988].) Since the goal of the doctrine is to avoid duplicative decisions on the same question, emphasis has been placed on the identity of the issue, as opposed to the identity of the parties involved, although an “identity” of parties is not absolute.
“Generally,... a person may not be precluded from litigating issues resolved in an action in which that person was not a party (see Blonder-Tongue v University Foundation, 402 US 313, 339; Hansberry v Lee, 311 US 32, 40; Dull v Blackman, 169 US 243, 248). Considerations of due process prohibit personally binding a party by the results of an action in which that party has never been afforded an op *543 portunity to be heard (Postal Tel. Cable Co. v Newport, 247 US 464, 476). This prohibition, of course, is not unconditional and identity of the parties, as opposed to identity of the issues, is not an absolute.” (Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 486 [1979].)
As explained and held in Ryan (supra), collateral estoppel will apply even if the tribunal or court was not the same, and the doctrine will also bar a party who was “in privity” with a party to the prior action.
“The doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.” (Ryan v New York Tel. Co., 62 NY2d at 500 [emphasis supplied].)
In determining whether or not privity exists between a party to the second action and a party in the prior action, the courts have not established a hard and fast rule. Indeed, privity has been described as an “amorphous term.” (Weiner v Greyhound Bus Lines, 55 AD2d 189, 192 [2d Dept 1976].)
“Privity has also been held to exist where there is a relationship between the litigant in the current suit and the party to the prior suit ‘such that the interests of the nonparty can be said to have been represented in the prior proceeding’ (Green v Santa Fe Indus., [70 NY2d] at 253). . . .
“[The rule in New York] eschews strict reliance on formal representative relationships in favor of a more flexible consideration of whether all of the facts and circumstances of the party’s and nonparty’s actual relationship, their mutuality of interests and the manner in which the nonparty’s interests were represented in the prior litigation establishes a functional representation such that ‘the nonparty may be thought to have had a vicarious day in court’ .... Further, the Court of Appeals has also held that ‘[collateral estoppel is a doctrine based on general notions of fairness involving a practical inquiry into the realities of the litigation . . . ; it should never be rigidly or mechanically applied’ (Matter of Halyalkar v Board of Regents, 72 NY2d 261, 268- *544 269 [emphasis supplied]).” (Matter of Slocum v Joseph B., 183 AD2d 102, 103-104 [3d Dept 1992] [citation omitted].)
The party seeking the benefit of collateral estoppel bears the initial burden of demonstrating that an issue in the present litigation is identical to an issue decided in the prior determination, whereas the burden rests upon the party opposing the use of collateral estoppel to show that it (or the party with whom it had privity) was not afforded a full and fair opportunity to have contested the issue in the prior proceeding. (Kaufman v Eli Lilly & Co., 65 NY2d 449 [1985]; Matter of Balcerak v County of Nassau, 94 NY2d 253 [1999].)
Discussion
Clearly, Reliance was acting in its capacity as JRC’s insurer in the federal action when it sought to disclaim coverage (for Mc-Callum and McLean). It is noted that at no point has Reliance sought to disclaim coverage for JRC in this action; and obviously Reliance and JRC had a “mutuality of interest” in the issues presented in the federal proceeding. In any event, it is noted that there has been no claim that the interests of Reliance and JRC are in any way divergent. This court finds, therefore, that there was, and is, “privity” between Reliance and JRC in the instant case; that they were, and are, united in interest; that the doctrine of collateral estoppel applies; and that JRC is vicariously liable for the negligence (if any) of Mc-Callum and McLean in the ownership and operation of the vehicle.
Even if the doctrine of collateral estoppel did not apply, this court concludes (as did the federal court) that the ICC “logo liability” regulations preclude JRC from denying responsibility for the actions and negligence, if any, of defendants McCallum and McLean. (See, Leotta v Plessinger, 8 NY2d 449, 459 [960].) In Leotta, the New York Court of Appeals (quoting Fullerton v Motor Express, Inc., 375 Pa 173, 175-176, 100 A2d 73, 74-75 [1953]) explained the rationale for the imposition of vicarious liability upon a common carrier which permits its name and/or logo to be used on a commercial vehicle:
“The law is clear that an identifying sign on a commercial vehicle declares its reputed ownership as much as a flag proclaims the nationality of the ship which flies it. If the ship is sailing under false colors it will have to answer for the deception. If a name on a vehicle mis-states ownership, opportunity is af *545 forded the named person or firm to disprove the asserted proprietorship. . . . Any business organization which permits a commercial conveyance to ply the public highways prominently proclaiming its name owes a duty to the public to stand by that voluntary self-advertising proclamation.” (8 NY2d at 459.)
In the concurring opinion, Chief Judge Desmond further explained “that the ICC regulations ‘fix responsibility upon the common carrier for the operation of leased vehicles until the carrier has relinquished possession in accordance with the regulations and has caused its identifying insignia to be removed.’ ” (Id. at 462.)
The issue of whether McCallum and McLean were negligent in the operation of the vehicle and whether this negligence was the proximate cause of the accident is deferred until a resolution of those issues, which have also been raised by all defendants in a related motion which is presently under consideration.
Conclusion
The motion by JRC for summary judgment based upon an alleged absence of vicarious liability is denied.

. In the complaint, the defendant JRC and the defendant J&C are each alleged to have been an owner of the vehicle as well as the employer of defendant McCallum. In the answer which was submitted jointly on behalf of JRC and J&C, as if they were one entity, these allegations are “denied in the form alleged.” No other explanation of the relationship is provided; and the documents and affidavits submitted on this motion do not further clarify the issue of ownership or the issue of the alleged employment relationship of McCallum with these entities. For convenience, unless otherwise specifically distinguished, they will be jointly referred to in the remainder of this decision as JRC, since it appears that J&C may have been erroneously named as a party. At a recent conference, counsel for plaintiff and defendant orally agreed to stipulate to discontinue the action as to J&C and to amend the caption of the action accordingly.

. The defendants, West Indian Carnival Associations and the West Indian American Day Association (hereinafter jointly referred to as WICA), are alleged to have sponsored the parade and to have obtained a permit to operate the parade; and thus are alleged to have control over the parade route (including the place of the accident alleged herein). A motion to dismiss has been made by WICA and is presently under consideration. Although named in the caption, the defendant British Virgin Islands is no longer a party to this action, all claims, actions and cross claims against this defendant having been dismissed and discontinued with prejudice, by order of the United States District Court for the Southern District of New York, dated August 26, 1998.